UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CANELL HOUSE,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>    Defendant. | No. 17 C 3936<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Canell House filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act). 42 U.S.C. §§ 405(g), 423 *et. seq,* 1381 *et seq.* The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C § 636(c), and filed cross motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

### I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI benefits on July 15, 2013, alleging that he became disabled on January 1, 2009 because of chest pains, heart problems, arthritis,

---

[1] Nancy A. Berryhill has been substituted for her predecessor, Carolyn W. Colvin, as the proper defendant in this action. Fed. R. Civ. P. 25(d).

back and knee problems, tennis elbow and high cholesterol. (R. at 106–09). These claims were denied initially on November 19, 2013, and upon reconsideration on June 10, 2014, after which Plaintiff filed a timely request for a hearing. (*Id.* at 14–15, 106–09, 137–140). On November 19, 2015, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 36–83). The ALJ also heard testimony from Ashok Jilhewar, M.D., a medical expert (ME), and James Breen, a vocational expert (VE). (*Id.*).

The ALJ issued a partially favorable decision on March 1, 2016. (R. at 20–35). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff did not engage in substantial gainful activity since his amended alleged onset date of September 26, 2012. (*Id.* at 23). At step two, the ALJ found that since the alleged onset date, Plaintiff had the following severe impairments: degenerative joint disease of the bilateral knees and mild degenerative changes in the lumbar spine. (*Id.*). Beginning on January 16, 2013, the ALJ determined that Plaintiff also had the following severe impairments: major depressive disorder and substance abuse. (*Id.*). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations. (*Id.*).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[2] and determined that prior to January 16, 2013, Plaintiff had the RFC to perform medium

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum

work as defined by 20 C.F.R. § 404.1567(c) and 416.967(c), except for the following limitations: "He could lift up to fifty pounds occasionally, and lift or carry up to twenty-five pounds frequently. He could not climb ladders, ropes or scaffolds. He could frequently climb ramps or stairs, balance, stoop, crouch, kneel, and crawl." (R. at 23). Beginning on January 16, 2013, however, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined by 20 C.F.R. § 404.1567(a) and 416.967(a), except:

> The claimant can lift up to ten pounds occasionally and five pounds frequently. He can stand and/ or walk for approximately two hours per eight-hour workday, and sit for approximately six hours per eight-hour workday, with normal breaks. The claimant cannot climb ladders, ropes, or scaffolds. He can occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl. The claimant is limited to simple, routine, and repetitive tasks in work at a variable pace; involving only end of the day production requirements; with no other periodic or hourly production quotas. The claimant is limited to only occasional interaction with the public in the work setting, coworkers, and supervisors.

(R. at 23). The ALJ determined at step four that since September 26, 2012, Plaintiff was unable to perform any past relevant work. (*Id.* at 27). Based on Plaintiff's RFC, age, education, work experience, and the VE's testimony that Plaintiff was capable of performing work as a janitor, dishwasher, and hand packer, the ALJ determined at step five that prior to January 16, 2013, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 27–38). However, the ALJ found that beginning on January 16, 2013, based on Plaintiff's age, education, work experience and RFC, there are no jobs that exist in significant

---

that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

numbers in the national economy that Plaintiff can perform. (*Id.* at 28). Accordingly, the ALJ concluded that Plaintiff was disabled, as defined by the Act, beginning on January 16, 2013, but was not disabled prior to that date. (*Id.* at 29).

The Appeals Council denied Plaintiff's request for review on March 24, 2017. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue,* 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Act. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004). It "must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). The ALJ's decision must be explained "with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "[T]he ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin,* 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## III. DISCUSSION

Plaintiff makes a number of arguments challenging the ALJ's decision. After reviewing the record and the parties' briefs, the Court is persuaded by Plaintiff's arguments that the ALJ erred when evaluating Plaintiff's subjective symptom statements.

Because an RFC assessment frequently "depend[s] heavily on the credibility of [a claimant's] statements concerning the 'intensity, persistence and limiting effects' of his symptoms," the Court begins with Plaintiff's argument that the ALJ improperly assessed his symptom statements. *See Bjornson v. Astrue,* 671 F.3d 640, 645 (7th Cir. 2012). The Regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2; *see also* 20 C.F.R. § 416.929. "Second, once an underlying

physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." SSR 16-3p, at *2.[3]

In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 96-7p; SSR 16-3p. An ALJ may not discredit a claimant's testimony about her symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003).

The Court will uphold an ALJ's subjective symptom evaluation if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*,

---

[3] Since the ALJ issued his decision in this case, the SSA has issued new guidance on how the agency assesses the effects of a claimant's alleged symptoms. SSR 96-7p and its focus on "credibility" has been superseded by SSR 16-3p in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." *See* SSR 16-3p, 2016 WL 1119029, at *1 (effective March 16, 2016). As SSR 16-3p is simply a clarification of the Administration's interpretation of the existing law, rather than a change to it, it can be applied to Claimant's case. *See Qualls v. Colvin*, No. 14 CV 2526, 2016 WL 1392320, at *6 (N.D. Ill. Apr. 8, 2016). The Court acknowledges the Administration's recent clarification regarding SSR 16-3p, instructing adjudicators only to apply this ruling when making "determinations and decisions on or after March 28, 2016." *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). Nevertheless, the Court continues to follow *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) indicating SSR 16-3p and SSR 96-7p are not substantively different.

555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Id*.

In his decision, the ALJ found that beginning on January 16, 2013, Plaintiff's "allegations regarding his symptoms and limitations are generally credible." (R. at 26). However, the ALJ found Plaintiff's allegations prior to January 16, 2013, "not entirely credible." (R. at 24). Specifically, the ALJ concluded that Plaintiff's allegations of physical limitations prior to January 16, 2013 were not supported by the medical evidence because 1) "physical examinations throughout 2012 show essentially normal musculoskeletal and neurological findings"; 2) Plaintiff "was able to walk and bear weight without any difficulty" despite complaints of right sided lower back, leg and knee pain in August 2012; and 3) "the record reveals no more than minimal evidence of treatment received until January 16, 2013." (R. at 25). The only reason the ALJ gave for discounting Plaintiff's allegations of mental limitations prior to January 16, 2013 was because Plaintiff "did not seek treatment for mental issues until May or June 2013." (R. at 27).

The Court finds that the reasons provided by the ALJ for rejecting Plaintiff's subjective symptom statements prior to January 16, 2013 are legally insufficient and not supported by substantial evidence, warranting remand on this issue. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016).

First, an ALJ may not discount a claimant's symptom statements "solely because they are not substantiated by objective evidence." SSR 16-3p at *5; *see Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014) (finding that "the ALJ erred in rejecting [claimant's] testimony on the basis that it cannot be objectively verified with any reasonable degree of certainty."). This is particularly true with allegations of pain. *See Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) ("The administrative law judge's most serious error, one we've noted in previous cases, is her belief that complaints of pain, to be credible, must be confirmed by diagnostic tests.") (citations omitted); *Pierce v. Colvin*, 739 F.3d 1046, 1049–50 (7th Cir. 2014) ("An ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results.").

Here, the ALJ erred by "inappropriately rest[ing] his credibility determination too heavily on the absence of objective support." *Pierce*, 739 F.3d at 1050. When discounting Plaintiff's allegations of pain between the amended alleged onset date of September 26, 2012 and January 16, 2013, the ALJ noted that physical examinations in 2012 showed "essentially normal musculoskeletal and neurological findings." However, the ALJ did not address evidence which corroborates Plaintiff's allegations of pain during this time period. For instance, on September 26, 2012, Deleoz Joy, M.D., gave Plaintiff a primary diagnosis of "joint pain." (R. at 403). Further, during an evaluation on January 16, 2013, Dr. Joy noted that Plaintiff had right elbow pain *for the past 2 months* that was getting worse, with "on and off" knee pain especially on ambulation." (R. at 404). Similarly, during the hearing,

when asked whether it was reasonable to assume Plaintiff's bilateral knee pain predated January 16, 2013, the ME, whose testimony the ALJ gave "great weight", answered, "definitely yes." (R. at 70). Indeed, "[a]n ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence." *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). The ALJ failed to explain why this documented evidence is outweighed by physical examinations that are "essentially normal." Without such a "logical bridge," the Court cannot assess the validity of the ALJ's analysis. *See Villano*, 556 F.3d at 562.

Second, the ALJ fails to explain *how* Plaintiff's ability to walk and bear weight without difficulty at a doctors' appointment in August 2012 undermines his allegations of right sided lower back, leg and knee pain. *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("[An ALJ] must explain perceived inconsistencies between a claimant's activities and the medical evidence."); *Ghiselli*, 837 F.3d at 778 (finding error when ALJ did not "identify a basis for his conclusion that the life activities [claimant] reported were inconsistent with the physical impairments she claimed"); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (finding that "the ALJ does not explain why the objective medical evidence does not support [claimant]'s complaints of disabling pain, and his failure to do so constitutes error). Without adequate explanation of why Plaintiff's ability to walk during an appointment was "necessarily inconsistent" with Plaintiff's allegations of pain, the ALJ failed "to build an accurate and logical bridge from the evidence to his conclusion," thus preventing the Court from tracing the path of the ALJ's reasoning. *See Clifford*, 227 F.3d at 871–72.

Third, the ALJ improperly evaluated Plaintiff's lack of treatment. While the regulations direct ALJs to consider treatment history when assessing the severity of a claimant's symptoms, 20 C.F.R. § 404.1529(c)(3)(v), an ALJ must not draw negative inferences about a failure to obtain treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Roddy v. Astrue*, 705 F. 3d 631, 638 (7th Cir. 2013) (internal quotation and citations omitted); *see* SSR 16-3p, *8; *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016); *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014); *see also Craft*, 539 F.3d at 678–79 ("An inability to afford treatment is one reason that can 'provide insight into the individual's credibility.'") (citing SSR 96-7p). Here, the ALJ did not explore possible reasons for Plaintiff's lack of treatment prior to January 16, 2013. At the hearing, Plaintiff testified to having gaps in his treatment due to having no insurance and being unable to afford care. (R. at 22). Likewise, the ME testified that a reason why Plaintiff "did not have any specific management on a continuous basis" for his knee pain prior to January 16, 2013, "maybe because of lack of appropriate health insurance." (R. at 71). The ALJ erred by not considering or addressing these reasonable explanations in his decision before discounting Plaintiff's allegations.

In sum, the ALJ failed to "build and accurate and logical bridge from the evidence to [his] conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing

meaningful judicial review. *See Scott*, 297 F.3d at 595. For these reasons, the Court finds that the ALJ did not offer substantial evidence for discounting Plaintiff's symptom statements prior to January 16, 2013, which is an error requiring remand.[4] On remand, the ALJ shall reevaluate Plaintiff's allegations with due regard for the full range of medical evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ shall then reevaluate Plaintiff's RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of his findings in accordance with applicable regulations and rulings. Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff could have performed prior to January 16, 2013.

## IV. REMEDY

Plaintiff requests a reversal of the Commissioner's decision with an order to award benefits or, in the alternative, a reversal with a remand for further proceedings. (Pl.'s Mem.,Dkt. 14 at 15). When reviewing a denial of disability benefits, a court may "affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). The court may reverse with an instruction to award benefits only if "all factual issues have been resolved and the record can yield but one supportable conclusion." *Briscoe*, 425 F.3d at 355 (citation omitted). That is not the case here, and it is not the purview of this Court to

---

[4] Because the Court remands on this basis, it need not address Plaintiff's other arguments at this time.

gather or reweigh evidence. Therefore, remand for further proceedings is the appropriate remedy.

## V. CONCLUSION

For the reasons stated above, Plaintiff's request to remand for additional proceedings [13] is **GRANTED**, and the Commissioner's motion for summary judgment [17] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: June 18, 2018

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge